*773 OPINION OF THE COURT
Roger B. Hunting, J.
This summary holdover proceeding involves the right to possession of a vacant residential unit in a loft building. The petitioner landlord alleges a wrongful assignment by the residential occupant to the prime lessees, who rely on a 1982 court decision to sanction their continued occupancy of the subject unit. The court finds the New York City Loft Board’s promulgation on August 23, 1983 of "Rules and Regulations Relating to Subletting, Subdivision and Assignment and Defining the Relationships Among the Parties and Their Rights and Obligations under Article 7-C of the Multiple Dwelling Law”, dispositive of the issues in this case, and, therefore, awards a judgment of possession to the petitioner landlord for the reasons hereafter set forth.
THE FACTS
The petitioner landlord, Health Tea Corporation, entered into a lease agreement with Tom and Francine Carter, the prime lessees, denominated herein as respondent undertenants, in August 1976 for a term of five years. The Carters’ lease for the entire fifth floor of the building located at 386-388 West Broadway expired on August 14, 1981. In November 1976, the prime lessees underlet in writing the southerly half of their loft space to Michael Dante, who always had a roommate during the term of his sublease that also expired on August 14, 1981. In his undisputed testimony the prime lessee, Tom Carter, stated that Dante vacated the premises in May 1981 and that under a parol agreement the south loft space was continuously occupied until June 1984 by Dante’s roommate, Laurie Wolin, denominated herein as one of the respondent tenants. Respondents’ trial exhibit T and U indicate that the prime lessee on April 15, 1984 purchased from Laurie Wolin loft fixtures for $1,900. Prime lessee Carter further testified that since Laurie Wolin vacated, he has used the space solely for storage, except for a brief time when a friend stayed as a guest in the unit.
After the petitioner landlord became aware that Laurie Wolin had moved, the instant proceeding was commenced on the ground of wrongful assignment of her interest in the subject premises to the Carters.
*774 THE THEORIES OF THE PARTIES
The contentions of both parties in this proceeding are framed around a decision rendered on July 27, 1982 by the Honorable Helen E. Freedman, Civil Court Judge, in a joint trial of Health Tea Corp. v Carter (L&T index No. 94255/81) and Health Tea Corp. v Pames (L&T 20931/82). The question in that case was whether the tenants and subtenants were subject to eviction, because they lived in the building, pursuant to commercial leases that restricted residential use. Under the concept known as "de facto multiple dwelling” Judge Freedman found among other things that the landlord could not evict the tenants for conduct it had knowledge of for over five years. The protections afforded loft tenants by the de facto multiple dwelling doctrine were codified in Multiple Dwelling Law article 7-C, Legalization of Interim Multiple Dwellings, enacted on June 21, 1982 (the Loft Law). The present law besides detailing tenant protections and owner obligations also invests the Loft Board with the authority to hold public hearings and issue necessary regulations to implement the statute. (See, Multiple Dwelling Law § 282, Establishment of Special Loft Unit.) This law and administrative regulations passed under its authority by the Loft Board govern the outcome of the case before us.
Judge Freedman in her scholarly opinion referred to Mr. Dante and Ms. Wolin as the "subtenants” of the Carters. Therefore, in the case at bar collateral estoppel has been advanced by the prime lessees’ counsel to characterize their relationship to the now vacant living unit as a subtenancy reversion to the original tenant. Petitioner’s counsel in fighting to defeat the burden of collateral estoppel argues that the subtenancy was in actuality an assignment from the outset, since the Carters and Dante ended the five-year sublease agreement on the same day as the overlease with Health Tea Corp.
However, the previous decision does not control the present situation for two reasons, primarily because of the enactment of the New York City Loft Board Regulations (Relating to Subletting, Subdivision, and Assignment) on August 23, 1983, which set forth a framework for resolution of disputes between owners, prime lessees and others. And secondly, because Judge Freedman’s case did not provide an opportunity for the parties to fully litigate the particular issue at bar, i.e., does a prime lessee, whose lease has expired, have superior rights to the building owner when a subtenant vacates.
*775 THE LAW
In a series of complex, yet remarkably comprehensive regulations, the Loft Board envisioned the precise conflict now before the court. Under the New York City Loft Board Regulations (Relating to Subletting, Subdivision, and Assignment), the Carters are not entitled to resume possession of the Dante/Wolin space. This occurs because direct privity was established between Health Tea Corp. and the occupant of the subleased space on June 21, 1982, the effective day of the Loft Law. (See, NY City Loft Board Regs [Relating to Subletting, Subdivision, and Assignment] § C [2].) Additionally, the regulations expressly limit the right of recovery of the prime lessee of subdivided space, who "shall not be entitled to claim any of the remaining space”. Therefore, the Carters have no rights to the Dante/Wolin unit. In Loft Board terminology Ms. Wolin is the protected "residential occupant”, because she was in occupancy on the effective date of the Loft Law. (See, NY City Loft Board Regs [Relating to Subletting, Subdivision, and Assignment] § B [5].) The evidence introduced by the respondents to verify the purchase of various fixtures by the Carters from Wolin, when she vacated the premises, does not operate to establish any greater right to the unit in the Carters than that which is permitted under the Loft Board rules, as outlined above. In fact, such a transaction may bé in violation of Multiple Dwelling Law § 286 (6), Tenant Protection, as well as New York City Loft Board Regulations (Relating to Subletting, Subdivision, and Assignment) § B (3) (c), which mandate a vacating residential occupant to offer the building owner the right of first refusal to purchase any loft improvements or fixtures. By statute the right to buy Wolin’s loft fixtures belongs firstly to Health Tea Corporation and secondly to whoever becomes Health Tea’s new tenant.
Since their loft area will no longer include the Dante/Wolin living unit, the Carters are certainly entitled to a reduction in rent. Foreseeing such outcomes in loft cases, a formula for the recalculation of rental charges for the reduction in the prime lessee’s space is contained in New York City Loft Board Regulations (Relating to Subletting, Subdivision, and Assignment) § C (6) (b) (iv) (A). The court directs the attention of the parties to it for the future rental charges on the Carters’ premises.
Accordingly, for all of the foregoing reasons the counter *776 claims of the respondents are dismissed and a judgment of possession shall be entered in favor of the landlord.